UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**UNION MUTUAL FIRE INSURANCE COMPANY,**

**Plaintiff,**

v.

**CITIMED COMPLETE MEDICAL CARE P.C.
D/B/A CITIMED DIAGNOSTIC, AND
REGINA MOSHE, M.D.,**

**Defendants.**

Case:

## ORIGINAL COMPLAINT

Plaintiff UNION MUTUAL FIRE INSURANCE COMPANY (hereinafter referred to as "Union") by and through their attorneys THE WILLIS LAW GROUP, LLC, allege as follows:

**I.  JURISDICTION AND VENUE**

1. This is a civil action to recover payments Union was fraudulently induced to make to the defendants as described herein. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the parties are diverse from each other, and the payments sought to be recovered exceed $75,000.00.

2. Venue is proper in this District under and pursuant to 28 U.S.C. § 1391, in that one or more of the defendants resides in this District and all defendants are residents of or does business in the State of New York.

## II. THE PARTIES

### A. Plaintiff

3. Plaintiff UNION MUTUAL FIRE INSURANCE COMPANY is duly organized and existing under the laws of the State of Vermont and maintains its office in that state.

### B. Defendants

4. Defendant CITIMED COMPLETE MEDICAL CARE P.C. d/b/a CITMED DIAGNOSTIC ("CitiMed") is a foreign professional corporation registered under the laws of the State of New York. At all times relevant herein, CitiMed maintained its principal place of business and other offices in the State of New York and/or is authorized to and does conduct business in New York.

5. Upon information and belief, Defendant REGINA MOSHE, M.D. ("Moshe") resides in and is a citizen of the State of New York. At all relevant times herein, Moshe has been licensed or otherwise authorized to practice medicine in the State of New York and is the owner, operator, officer, director, agent and/or employee of CitiMed. Upon further information and belief, at all times relevant, Moshe controlled and directed the conduct described herein.

6. CitiMed and Moshe are collectively referred to herein as "Defendants".

## III. FACTUAL BACKGROUND

### A. Fraud Scheme

7. From at least 2017 to the present, Defendants, for their financial benefit, orchestrated a scheme ("Fraud Scheme") to defraud Plaintiff and others by creating and using fraudulent diagnoses and medically unnecessary and excessive healthcare services to submit claims for reimbursement for services rendered.

8. Generally, as part of the Fraud Scheme, the Defendants would examine patients referred by other medical providers. Such patients were seeking medical treatment for bodily injuries stemming from purported accidents, including, but not limited to, construction, motor vehicle and slip and fall accidents.

9. The Defendants would conduct radiological diagnostics, including x-rays and magnetic resonance imaging ("MRI"), on the patients, and thereafter create medical reports with the results. The reports provided findings and impressions that did not exist and/or failed to report findings and impressions that would have medically established that such injuries were degenerative, chronic and not acute or casually connected to the alleged accident.

10. The Defendants knew of the falsity of the reports and understood and agreed that in turn for providing the false medical reports to referring medical providers, the Defendants would continue to have patients referred to them.

11. Defendants remitted invoices for payment founded upon the testing and false medical reports. The submission of such documentation misled Plaintiff and others into believing that the testing was necessary and that claims for payment were legitimate in violation of New York Insurance Law § 403, New York Penal Law § 176.05 and New York Workers' Compensation Law § 114. Under such laws, Defendants' conduct as demonstrated herein constitutes fraud.

12. Furthermore, Defendants knew or should have known that subsequent diagnoses and treatment, including expensive surgeries, and general liability lawsuits would be predicated upon their false reports and that payment for such subsequent treatment would be sought and issued, and that costs to defend such lawsuits would be incurred. Accordingly, Plaintiff was induced to and did pay Defendants directly and others due to, in whole or in part, the Defendants' conduct.

B. **Fraudulent Treatment and Diagnosis**

13. The Defendants engaged in the Fraud Scheme resulting in unnecessary treatment and a significant number of fraudulent claims and lawsuits being filed. For example, the following are just a fraction of the fraudulent claims for which Plaintiff seeks recovery of payment.

    i. Claimant A

14. Claimant A was allegedly injured on or about September 28, 2018, when Claimant A slipped and fell while traversing a sidewalk. During the course of treatment resulting from the alleged accident, Claimant A presented to Dr. Mark Goodstein for management of the alleged injuries. Dr. Goodstein referred Claimant A to the Defendants for various diagnostic tests, including MRIs of the thoracic and lumbar spine.

15. On or about June 18, 2019, Claimant A presented to CitiMed to obtain the requested MRI of the thoracic and lumbar spines. Following the exam, CitiMed generated a report representing findings that there was multilevel disc signal loss between T1 and T6 and annular tears at T4/5 and T5/6. CitiMed further generated a report representing that there were mild diffuse posterior disc bulges effacing epidural fat and contacting the thecal sac at L4/L5 and L5/S1 with regional nerve root encroachment.

16. The report generated by the Defendants was false and misleading. Specifically, Dr. Jonathan S. Luchs, a board-certified radiologist licensed in New York and Chief Medical Officer and Partner at Premier Radiology Services, LLC, performed an independent radiology review of Claimant C's thoracic and lumbar MRIs. Dr. Luchs noted that the finding of annular tears at T4/5 and T5/6 was not indicated as there were no annular tears present. Dr. Luchs also noted that there was evidence of multilevel degenerative disc disease not included in the MRI report. Dr. Luchs further noted that there was evidence of multilevel degenerative disc disease and degenerative

arthropathy resulting in narrowing of the lumbar spine, which was similarly not reported. Had these findings been reported, it would have established these injuries as degenerative and chronic and not casually related to the subject accident.

17. The Defendants knew that their report was false and misleading, and intentionally transmitted it to Dr. Goodstein, Plaintiff and others whom the Defendants also knew and/or should have known would use the report as a basis to render unnecessary treatment, engage in litigation, and seek payments and settlements. The Defendants also knew that the Plaintiff would and did pay for the Defendants' false exam records.

18. Based on the issuance and submission of the fraudulent report and other claim documentation, Plaintiff issued payment by mail and/or by EFT transfer to the Defendants and incurred substantial costs in the defense of lawsuits that would either not have been brought or would have been resolved earlier but for such report.

    ii.    <u>Claimant B</u>

19. Claimant B was allegedly injured on or about January 6, 2020, when Claimant B slipped and fell within his bedroom. During the course of treatment resulting from the alleged accident, Claimant B presented to Dr. Riaz Ahmed for management of the alleged injuries. Dr. Ahmed referred Claimant B to the Defendants for various diagnostic tests, including MRIs of the lumbar spine and cervical spine.

20. On or about June 14, 2021, Claimant B presented to CitiMed to obtain the requested MRIs of the lumbar spine and cervical spine. Following the exam, CitiMed generated a report representing findings that there was cervical spasm with focal acute central herniations of the nucleus pulposus at C3/4, C4/5 and C5/6 and with impingement of the nerve roots centrally at all 3 levels. Further, there was normal appearance of the cervical cord. CitiMed generated a further

report representing that there was bulging of the annulus fibrosis of the L3/4 and L4/5 discs with intact lumbar vertebral bodies and normal conus medullaris.

21. The reports generated by the Defendants were false and misleading. Specifically, Dr. Sean Lager, a board-certified orthopedic surgeon licensed in New Jersey, performed an independent orthopedic examination of Claimant B, which included a review of Claimant B's lumbar and cervical spine MRIs. Dr. Lager noted that the examination revealed no clinical correlation to the MRI report findings of the cervical spine. Dr. Lager further noted that the MRI findings for the lumbar spine revealed bulges which were not caused by an acute traumatic event. Although these findings are degenerative and not casually connected to the subject accident, CitiMed utilized this report and subsequently treated Claimant B for the injuries as if they were posttraumatic and secondary to the alleged accident.

22. The Defendants knew that their report was false and misleading, and intentionally transmitted it to Dr. Ahmed, Plaintiff and others whom the Defendants also knew and/or should have known would use the report as a basis to render unnecessary treatment, engage in litigation, and seek payments and settlements. The Defendants also knew that the Plaintiff would and did pay for the Defendants' false exam records.

23. Based on the issuance and submission of the fraudulent report and other claim documentation, Plaintiff issued payment by mail and/or by EFT transfer to the Defendants and incurred substantial costs in the defense of lawsuits that would either not have been brought or would have been resolved earlier but for such report.

   iii. <u>Claimant C</u>

24. Claimant C was allegedly injured on or about March 1, 2019, when Claimant C was walking on a sidewalk and tripped and fell. Following the alleged accident, Claimant C presented

to Dr. Alexandre Grigorian. Dr. Grigorian referred Claimant C to the Defendants for an MRI of the lumbar spine.

25. On or about June 20, 2019, Claimant C presented to CitiMed to obtain the requested MRI of the lumbar spine. Following the exam, CitiMed generated a report representing findings that the lumbar spine had diffuse posterior disc bulges indenting the thecal sac with superimposed broad-based posterior central subligamentous herniation and regional nerve root impingement at L4/5, with disc space height and signal loss attributable to dispersal of herniated central nucleus pulposus.

26. The reports generated by the Defendants were false and misleading. Specifically, Dr. Jonathan Luchs, a board-certified radiologist licensed in New York, New Jersey and Connecticut (along with multiple other states) and current Chief Medical Officer and Partner of Premier Radiology Services, LLC, reviewed the MRI film of Claimant D's lumbar spine and found no evidence of fracture. He also found disc desiccation and bulge at L4/5, which was evidence of degenerative disc disease. Moreover, there was disc desiccation and disc bulge at L3/4. The disc desiccation and bulge at both L3/4 and L4/5, along with evidence of degenerative disc disease, were not reported in the MRI film. Had these findings been reported, it would have established the injuries as chronic and not posttraumatic or casually connected to the subject accident.

27. The Defendants knew that their report was false and misleading, and intentionally transmitted it to Dr. Grigorian, Plaintiff and others whom the Defendants also knew and/or should have known would use the report as a basis to render unnecessary treatment, engage in litigation, and seek payments and settlements. The Defendants also knew that the Plaintiff would and did pay for the Defendants' false exam records.

28. Based on the issuance and submission of the fraudulent report and other claim documentation, Plaintiff issued payment by mail and/or by EFT transfer to the Defendants and incurred substantial costs in the defense of lawsuits that would either not have been brought or would have been resolved earlier but for such report.

C. **Defendants' Participation in the Fraud Scheme**

29. At all relevant times, the Defendants individually or in unison, coordinated the examination, diagnosis, reports, transmission of such to other medical providers and the submission of insurance claim forms.

30. Since at least 2017, the Defendants have been involved in hundreds of lawsuits involving purported injuries in furtherance of the Fraud Scheme. Such lawsuits are not limited to just ones against Union's insureds.

31. Moshe, as an internal medicine physician and a principal of CitiMed, controlled and directed the medical services provided to patients by ordering and providing radiological and imaging diagnostics and MRI reports, performed and authored by CitiMed identifying purported positive findings without correlation to degenerative conditions and providing inaccurate findings of the Claimants' conditions.

32. As part of the Fraud Scheme, the Defendants knowingly and intentionally submitted or caused the submission of fraudulent medical documentation either directly or indirectly to Plaintiff, for which Defendants were paid, that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged accident or did not exist.

33. As part of the Fraud Scheme, the Defendants provided fraudulent medical documentation by mail, facsimile and/or email to attorneys and other medical service providers knowing that the fraudulent medical documentation would be used or relied upon to initiate or

prolong litigation with inflated settlement demands and render additional medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged accident or did not exist.

34. The Defendants knowingly profited from reimbursements for the alleged imaging and diagnostic services rendered by the Defendants that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged accident or did not exist but were rendered in furtherance of the Fraud Scheme.

35. The Defendants also knowingly profited from the increased number of patients who were referred to them as part of the Fraud Scheme, for whom the Defendants provided imaging and diagnostic services and received reimbursement for such services.

## IV. DAMAGES

36. Plaintiff is an insurance carrier which underwrites policies that cover the various claims and lawsuits filed and prosecuted by patients examined as part of the Fraud Scheme. A current list of claims that are substantially identical or similar to those demonstrated herein and at issue is attached hereto as Exhibit "A".

37. Plaintiff made substantial payments to Defendants and sustained significant damage in connection with the claims listed on Exhibit "A". Such damages include actual and consequential damages for the payments Union made as costs for defending fraudulent lawsuits and/or for reimbursement for payments made directly to the Defendants due to Defendants' pattern of fraudulent conduct. Damages also include actual and consequential damages for payments Union made as reimbursement for payments made to other medical providers for treatment predicated upon, in whole or in part, the fraudulent reports generated by the Defendants. Although it is not necessary for Plaintiff to calculate damages with specificity at this stage in the litigation

(whereas Plaintiff's damages continue to accrue), Plaintiff's injuries amount to at least $3,329,487.09.

V.  **CAUSES OF ACTION**

**COUNT I**
**Common Law Fraud**

38. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

39. Defendants made misrepresentations of facts, misled, deliberately concealed, and omitted materials facts that they had a duty to disclose in connection with their claims for reimbursement and/or payment under New York law.

40. These misrepresentations of fact by Defendants included, but were not limited to, the material misrepresentations of fact made in asserting the legitimacy and existence of injuries and the necessity of treatment.

41. Defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

42. Defendants made these misrepresentations in furtherance of the scheme to defraud Plaintiff and others by issuing false reports and inducing others to perform treatment or pursue litigation they knew or should have known would not have occurred otherwise.

43. Defendants' misrepresentations were known to be false from the onset and were made for the purpose of inducing Plaintiff to make payments for claims that were not legitimate.

44. Plaintiff reasonably and justifiably relied, to its detriment, on the truthfulness of Defendants' representations concerning their eligibility to receive payments of insurance benefits,

on the completeness of their disclosures of material facts, and without knowledge of Defendants' scheme and artifice to defraud them.

45. Defendants knew, or should have known, that Plaintiff would rely on and intended that Plaintiff rely on their truthfulness.

46. But for the Defendants' misrepresentations, omissions, concealment of material facts, and fraudulent course of conduct, Plaintiff would not have paid insurance benefits.

47. Plaintiff at no time knew or had reason to know in the exercise of due diligence or reasonable care that Defendants were engaged in misrepresentations, omissions, concealment of material facts, and fraudulent conduct.

48. As a direct and proximate cause of Defendants' misrepresentations, omissions, concealment of material facts, and fraudulent course of conduct by Defendants, Plaintiff has been damaged. Plaintiff's damages include, but are not necessarily limited to, benefit payments paid by Plaintiff to Defendants or those caused by Defendants.

49. Because Defendants' conduct was knowing, intentional, willful, wanton, and reckless, Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for:

(a) An award of Plaintiff's actual and consequential damages to be established at trial;

(b) An award of punitive damages;

(c) Plaintiff's costs; and

(d) Such other relief as the Court deems just and proper.

## Count II
## Unjust Enrichment

50. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

51. As described above, Defendants conspired to induce Plaintiff to make or expend numerous and substantial payments to them or others.

52. The Defendants were never eligible to make claims or seek reimbursement under New York law because, at all relevant times, the injuries and treatment were fraudulent.

53. When Plaintiff paid Defendants and others, Plaintiff reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Defendants, or those persons working under their control, made concerning Defendants' eligibility to make claims or seek reimbursement under New York law.

54. Each and every payment that Plaintiff made or was caused to make to Defendants and others during the course of the Fraud Scheme constitutes a benefit, either directly or through increased referrals, that the Defendants sought and voluntarily accepted.

55. Throughout the course of their scheme, Defendants wrongfully obtained from Plaintiff benefit payments as a direct and proximate result of the unlawful conduct detailed above.

56. Retention of those benefits by Defendants would violate fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for:

(e) An award of Plaintiff's actual and consequential damages to be established at trial; and

57. Such other relief as the Court deems just and proper.

## Count III
## Declaratory Relief Pursuant to 28 U.S.C. § 2201

58. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

59. Pursuant to 18 U.S.C. § 2201(a), the Court may determine the rights and legal obligations of the parties.

60. There is an actual case and controversy between Plaintiff on the one hand, and Defendants on the other hand, as to all charges for examinations, records, and other costs of defense that have not been paid to date and/or will be incurred through the pendency of the claims made which are the basis of this lawsuit.

61. Because these Defendants have made false and fraudulent statements and otherwise engaged in the fraudulent conduct described above with the intent to conceal, mislead and misrepresent material facts and circumstances regarding each claim submitted, these Defendants are not entitled to any reimbursement by Plaintiff for alleged services relating to any of the claims at issue.

WHEREFORE, Plaintiff demands judgment against Defendants for:

(a) A declaration that Defendants, at all times relevant, have sought reimbursement for providing fraudulent healthcare services in violation of New York law;

(b) Declare that Defendants' activities are unlawful;

(c) Declare that Plaintiff is entitled to the return of payments made directly to the Defendants as a result of Defendants' unlawful conduct; and

(d) Such other relief as the Court deems just and proper.

## VI. JURY TRIAL DEMAND

62. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims.

Dated: August 30, 2024

        Respectfully submitted,

        **THE WILLIS LAW GROUP, PLLC**

    By: */s/ William J. Clay*
        **WILLIAM J. CLAY** *(pro hac pending)*
        **MICHAEL A. GRAVES**
        **AARON E. MEYER**
        **KIRK D. WILLIS** *(pro hac pending)*
        1985 Forest Lane
        Garland, Texas 75042
        Telephone: 214-736-9433
        Facsimile: 214-736-9994
        Service Email: service@thewillislawgroup.com

        ***ATTORNEYS FOR THE PLAINTIFF***
        **UNION MUTUAL FIRE INSURANCE COMPANY**