UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNION MUTUAL FIRE INSURANCE COMPANY,

      *Plaintiff,*

  – against –

CITIMED COMPLETE MEDICAL CARE, P.C., *d/b/a* CITIMED DIAGNOSTIC; REGINA MOSHE, M.D.,

      *Defendants.*

**MEMORANDUM & ORDER**
24-cv-06111 (NCM) (VMS)

---

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Union Mutual Fire Insurance Company ("Union Mutual") brings this fraud action against defendants Citimed Complete Medical Care, P.C. ("CitiMed") and Dr. Regina Moshe. Before the Court is defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons stated below, defendants' motion is **GRANTED** in part, **DENIED** in part.

## BACKGROUND

Defendant Dr. Moshe is an internal medicine physician and the owner and principal of defendant Citimed, a New York based medical practice providing radiologic, diagnostic, and imaging services. Compl. ¶¶ 4–5, 31. Plaintiff Union Mutual is an insurance carrier that underwrites policies covering claims and lawsuits brought by

---

[1] The Court hereinafter refers to the Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings, ECF No. 40-1, as the "Motion"; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion, ECF No. 40-2, as the "Opposition"; and the Reply Memorandum of Law in Support of Defendants' Motion, ECF No. 40-3, as the "Reply."

defendants' patients. Compl. ¶ 36. According to plaintiff, defendants have engaged in a years-long scheme that "result[e]d in unnecessary treatment and a significant number of fraudulent claims and lawsuits being filed." Compl. ¶ 13.

The scheme works as follows. First, other medical providers would refer patients to defendants' practice in connection with treament for injuries stemming from construction, motor vehicle, or slip and fall accidents. Compl. ¶ 8. Upon referral defendants would conduct various diagnostic tests, including magnetic resonance imaging ("MRI") and x-rays. Compl. ¶ 9. Defendants created medical reports containing the results of these tests; plaintiff alleges that these reports "provided findings and impressions that did not exist and/or failed to report findings and impressions that would have medically established that such injuries were . . . not acute or ca[us]ally connected to the alleged accident." Compl. ¶ 9. According to plaintiff, defendants "knew of the falsity of the reports," but agreed to do so with the understanding that by "providing the false medical reports to referring medical providers, the [d]efendants would continue to have patients referred to them." Compl. ¶ 10. Defendants profited from this scheme because they "remitted invoices for payment founded upon the testing and false medical reports[,]" and, based on the false reports, plaintiff "was induced to and did pay [d]efendants directly[.]" Compl. ¶¶ 11–12. Moreover, plaintiff alleges that it was foreseeable that "subsequent diagnoses and treatment, including expensive surgeries, and general liability lawsuits would be predicated upon the[] false reports," and thus defendants should have known "that payment for such subsequent treatment would be sought and issued, and that costs to defend such lawsuits would be incurred." Compl. ¶ 12.

The complaint describes three specific fraudulent reports generated by defendants that are emblematic of this scheme. For example, "Claimant A" was allegedly injured

2

when they slipped and fell while crossing a sidewalk in September 2018. Compl. ¶ 14. Claimant A sought treatment for their injuries and was referred by their physician to defendants for diagnostic tests, including MRIs of their spine. Compl. ¶ 14. Approximately eight months later, CitiMed conducted an MRI and generated a report indicating that "there was multilevel disc signal loss between T1 and T6 and annular tears at T4/5 and T5/6." Compl. ¶ 15. The report also indicated that Claimant A had "mild diffuse posterior disc bulges effacing epidural fat and contacting the thecal sac at L4/L5 and L5/S1 with regional nerve root encroachment." Compl. ¶ 15. Plaintiff claims these reports were false and misleading based on an independent review by its own radiology expert that found "no annular tears present," and that "there was evidence of multilevel degenerative disc disease" as well as "arthropathy resulting in narrowing of the lumbar spine" that were not included in the MRI report. Compl. ¶ 16. Defendants transmitted the fraudulent report to Claimant A's doctor, "[p]laintiff and others," knowing that the report would be used for "unnecessary treatment" and to "engage in litigation." Compl. ¶ 17. Plaintiff makes similar allegations regarding Claimants B and C, and attached as an exhibit to its complaint a list of twenty-eight claims in total which it alleges were part of the fraudulent scheme. *See* Compl. Ex. A ("List of Claims"), ECF No. 1-1.

Plaintiff alleges that the individual defendant, Dr. Moshe, "controlled and directed the medical services provided to patients by ordering and providing radiological and imaging diagnostics and MRI reports, performed and authored by CitiMed identifying purported positive findings without correlation to degenerative conditions and providing inaccurate findings of the Claimants' conditions." Compl. ¶ 31. Plaintiff asserts that it has been injured by defendants' scheme in at least two ways: (1) by reimbursing medical providers, including defendants, for unnecessary treatment predicated on defendants'

3

fraudulent conduct; and (2) by incurring costs for defending allegedly sham lawsuits resulting from defendants' fraudulent conduct. *See* Compl. ¶ 37. Plaintiff alleges that it has incurred more than $3 million in damages. Compl. ¶ 37.

On August 30, 2024, plaintiff filed the instant suit, bringing a claim for common law fraud and a claim for unjust enrichment. Compl. ¶¶ 38–57. Along with actual, consequential, and punitive damages, plaintiff seeks a declaratory judgment declaring that defendants have sought fraudulent reimbursements and that plaintiff "is entitled to the return of payments made directly to the [d]efendants as a result of [d]efendants' unlawful conduct." Compl. ¶ 61. Defendants now move for judgment on the pleadings, and also seek dismisssal for lack of subject-matter jurisdiction. *See* Mot.

## LEGAL STANDARD

### I.      Rule 12(b)(1)

Under Rule 12(b)(1), a case is properly dismissed "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). [2] Subject matter jurisdiction is "not waivable and may be raised at any time by a party or by the court sua sponte." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

---

[2]      Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

## II.     Rule 12(c)

The legal standard governing a motion for judgment on the pleadings pursuant to Rule 12(c) is identical to that governing a motion to dismiss pursuant to Rule 12(b)(6). *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021). When deciding a Rule 12(c) motion, a district court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor." *Altman v. J.C. Christensen & Assocs.*, 786 F.3d 191, 193 (2d Cir. 2015). Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "[t]he issue" on a motion for judgment on the pleadings "is not whether the plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Schiappa v. Brookhaven Sci. Assocs.*, 403 F. Supp. 2d 230, 234 (E.D.N.Y. 2005) (citing *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).

In order to survive a motion for judgment on the pleadings pursuant to Rule 12(c), a plaintiff must state "a claim to relief that is plausible on its face." *Burgos v. Satiety, Inc.*, No. 10-cv-02680, 2011 WL 1327684, at *1 (E.D.N.Y. Apr. 5, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678.

5

## DISCUSSION

### I.    Subject Matter Jurisdiction

As a threshold matter, defendants contend that the Court lacks subject-matter jurisdiction over this dispute because plaintiff's allegations fail to demonstrate that the amount-in-controversy requirement to establish diversity jurisdiction has been satisfied. *See* Mot. 7–8. The amount in controversy is "established by the fact of the complaint and the dollar-amount actually claimed." *Spaulding v. Figeroux*, 16-cv-01040, 2016 WL 1240428, at *3 (E.D.N.Y. Mar. 29, 2016) (citing *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005)). The party invoking diversity jurisdiction must "show by a reasonable probability that the amount-in-controversy requirement is satisfied." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006). There is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* A party seeking to defeat this presumption may do so only if they "show that the complaint [is] so patently deficient as to reflect to a legal certainty that the plaintiff could not recover the amount alleged." *Id.*; *see Saenger v. Presbyterian Church of Mount Kisco*, No. 96-cv-07684, 1997 WL 742531, at *2 (S.D.N.Y. Dec. 1, 1997) ("[T]he Court may only dismiss a complaint if it appears to a legal certainty that the plaintiff cannot recover an amount meeting the jurisdictional threshold."). In other words, defendant must show "that it is legally impossible for plaintiff to recover an amount that satisfies the jurisdictional threshold." *Plymouth Res., LLC v. Norse Energy Corp. USA*, No. 10-cv-00909, 2011 WL 13234819, at *5 (N.D.N.Y. Mar. 10, 2011); *see also Bindrum v. Am. Home Assurance Co.*, 441 F. App'x 780, 781 (2d Cir. 2011) (summary order).

Defendants fail to make such a showing here. Plaintiff estimates its damages to be at least $3,329,487.09. Compl. ¶ 37. These damages are comprised of, among other things, "substantial payments to [d]efendants," including "for reimbursement for payments made directly to the [d]efendants due to [d]efendants' pattern of fraudulent conduct." Compl. ¶ 37. These allegations, entitled to an assumption of truth and a presumption that they are a "good faith representation of the actual amount in controversy" at the pleading stage, *see Colavito*, 438 F.3d at 221, are sufficient to establish that the amount in controversy has been met at this juncture.

Defendants attempt to resist this conclusion by arguing that "the [c]omplaint does not allege any transaction in which [p]laintiff made a direct payment to [d]efendants." Mot. 7. In defendants' view, plaintiff's sole "arguable basis" for satisfying the amount-in-controversy requirement arises from the "assertion of consequential damages," i.e., payments plaintiff made to third parties. Mot. 7. But according to defendants, "third-party reliance does not satisfy the reliance element of a fraud claim," Mot. 8 (quoting *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016)), and, therefore, plaintiff "cannot recover based on payments it attempts to connect to [d]efendants' alleged statements" that were made to third parties such as other physicians or attorneys. Mot. 8. Thus, because plaintiff cannot recover for consequential damages based on its fraud claim—and in the absence of any direct damages attributable to defendants' conduct—the complaint fails to plausibly establish that the amount in controversy meets or exceeds $75,000. *See* Mot. 7–8. The Court disagrees.

For one, contrary to defendants' argument, *see* Mot. 7, the complaint *does* allege that plaintiff made payments directly to defendants. *See* Compl. ¶ 37 ("Plaintiff made substantial payments to [d]efendants and sustained significant damage[s]."). Indeed, the

7

complaint alleges that plaintiff "sustained significant damage[s]" in connection with "reimbursement for payments made directly to the [d]efendants due to [d]efendants' pattern of fraudulent conduct." Compl. ¶ 37. Moreover, the complaint identifies three claimants, including their specific dates of treatment at CitiMed, and specific fraudulent reports in connection with that treatment. *See* Compl. ¶¶ 15–16, 20–21, 25–26. And in connection with each of these claimants and allegedly false reports, "[p]laintiff issued payment by mail and/or by EFT transfer to the [d]efendants." Compl. ¶¶ 18, 23, 28.

To the extent defendants quibble with the fact that the complaint fails to identify a specific "transaction" in which a payment was made directly from plaintiff to defendants, *see* Mot. 7, to hold that a plaintiff must identify specific transactions to support the amount-in-controversy requirement is simply too demanding a standard at the motion to dismiss stage. *See, e.g., LaNasa v. Stiene*, 731 F. Supp. 3d 403, 414 (E.D.N.Y. 2024) ("Plaintiff need not itemize his losses to meet the amount-in-controversy requirement at [the motion to dismiss] stage."). And in any event, plaintiff alleges that its damages are comprised of, at least in part, payments made in connection with the 28 specific medical claimants referenced in the List of Claims attached to the complaint. *See* Compl. ¶ 37; *see also* List of Claims. Moreover, as discussed above, plaintiff alleges that it "issued payment by mail and/or by EFT transfer to the [d]efendants" in connection with three specific individuals whose dates of treatment are identified in the complaint. *See* Compl. ¶¶ 18, 23, 28.

In a similar vein, defendants' argument that they "never submitted any reimbursement claim[s] to [p]laintiff, nor did [p]laintiff ever remit any payment to [d]efendants," Mot. 7, is both premature and belied by the complaint. Plaintiff alleges that "[d]efendants remitted invoices for payment" based upon fraudulent medical reports, and

8

that "such documentation misled [p]laintiff and others into believing . . . that claims for payment were legitimate." Compl. ¶ 11. The complaint further alleges that defendants submitted "fraudulent medical documentation either directly or indirectly to [p]laintiff, for which [d]efendants were paid." Compl. ¶ 32. Whether these allegations ultimately bear out is an issue for another day. *See* Opp'n 14 n.3. But for purposes of the Court's review at the motion-to-dismiss stage, these allegations are taken to be true and support the reasonable inference that the amount in controversy exceeds $75,000.

Defendants' contention that plaintiff's "damages theory is speculative," and that its "allegations of payment are vague, conclusory, and contradict[ory]," Reply 6, is also without merit. As set forth above, far from vague or conclusory, plaintiff alleges that it made payments pertaining to at least 28 specific medical claimants, *see* List of Claims, and goes so far as to allege specific dates of treatment and exams for which it is seeking to recover, *see* Compl. ¶¶ 18, 23, 28. To the extent defendants argue that plaintiff's damages theory seeking to recover payments paid to third parties such as outside medical providers is "speculative," Reply 6, this too fails to defeat the presumption that the damages sought in the complaint are a "good faith representation of the actual amount in controversy," *Colavito*, 438 F.3d at 221. This is so because it is not enough merely for defendants to show that plaintiff's damages are speculative, instead, they must demonstrate that it is "legally impossible for plaintiff to recover an amount that satisfies the jurisdictional threshold." *See Plymouth*, 2011 WL 13234819, at *5 ("At this early stage of litigation, even if it appears highly unlikely that plaintiff could recover compensatory damages remotely approaching $75,000, dismissal for failure to allege the requisite jurisdictional amount would be improper."). And even setting aside whatever damages might arise from payments to third parties, defendants fail to demonstrate that the

"substantial payments," Compl. ¶ 37, plaintiff made to defendants and seek to recover for here are legally impossible to recover, or that such damages do not meet the requisite jurisdictional amount. In other words, defendants have not shown that it is "a legal certainty that . . . plaintiff cannot recover an amount meeting the jurisdictional threshold." *Saenger*, 1997 WL 742531, at *2.

Therefore, the Court finds that plaintiff plausibly alleges that the amount in controversy meets or exceeds $75,000. The Court is accordingly satisfied that it has subject-matter jurisdiction at this juncture. Defendants' motion to dismiss on this ground is denied.

## II.     Fraud

Federal courts sitting in diversity apply the substantive law of the forum state. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir. 2002). To state a fraud claim under New York law, a plaintiff must plausibly allege "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 189–90 (2d Cir. 2023). Additionally, "[a] plaintiff claiming fraud must . . . comply with Rule 9(b)'s heightened pleading standard." *Von Horn v. Connors*, No. 22-cv-04721, 2024 WL 2578058, at *3 (E.D.N.Y. Mar. 28, 2024). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To comply with this requirement, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

fraudulent." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013).

Plaintiff's fraud claim is premised on an alleged scheme in which defendants examined and tested patients referred by other medical providers and created false medical reports in exchange for increased referrals and reimbursement for unnecessary services. *See* Compl. ¶¶ 8, 10, 34–35. Specifically, defendants allegedly generated medical reports that contained "findings and impressions that did not exist" or omitted "findings and impressions that would have established that [the patient's] injuries were . . . [un]connected to the alleged incident." *See* Compl. ¶ 9. Plaintiff alleges that defendants participated in this scheme with the understanding that "in turn for providing the false medical reports to referring medical providers, . . . [d]efendants would continue to have patients referred to them." Compl. ¶ 10. Moreover, plaintiff alleges that defendants "knowingly profited from reimbursements for the alleged imaging and diagnostic services" they rendered, and that such services "were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged accident[s] or did not exist but were rendered in furtherance of the [f]raud [s]cheme." Compl. ¶ 34.

Defendants contend that these allegations do not make out a fraud claim under New York law. Defendants principally argue that plaintiff's fraud claim is not cognizable because it is "premised on misrepresentations made to third parties." Mot. 16. That is, defendants' false reports were neither "prepared for or intended to be provided to [p]laintiff." Mot. 16. Rather, defendants supplied the reports and the statements therein to third parties such as medical providers, patients' attorneys, or the patients themselves. Thus, in defendants' view, "[i]f [p]laintiff has any remedy, it lies in asserting claims against those third parties." Mot. 8. Defendants further argue that the fraud claim is

deficient because plaintiff fails to allege the requisite elements with sufficient particularity as required by Rule 9(b), including because the complaint does not allege "the date, time, place, speaker, and content of each purported misrepresentation or omission," nor does plaintiff provide any "specific allegations whatsoever concerning Claimants D through BB." Mot. 15. Defendants also contend that plaintiff's allegations concerning the other elements of fraud—scienter, reliance, and damages/causation—are otherwise insufficient and implausibly pled. *See* Mot. 17–20.

Before turning to defendants' arguments, the Court observes that a recent case in this District, *Union Mutual Fire Insurance Co. v. Stand Up MRI of Brooklyn, P.C.*, No. 24-cv-06652, 2025 WL 3165668 (E.D.N.Y. Nov. 12, 2025) is instructive as to plaintiff's claims. Plaintiff there argued that the defendants, several radiology practices and individual doctors associated with those practices, "generated falsified MRI reports that caused plaintiff to pay for unnecessary medical treatments and defend allegedly sham lawsuits against its insureds." *Id.* at *1. Among other relief, plaintiff brought claims for fraud and unjust enrichment. *Id.* at *2. The defendants moved to dismiss on many of the same grounds that defendants raise here, namely, that plaintiff "impermissibly attempt[ed] to state a fraud claim via third-party reliance," *id.* at *4, that plaintiff failed to plead its fraud claim with sufficient particularity, *id.* at *5, that the elements of the fraud claim were otherwise not plausibly pled, *id.* at *3–4, and that plaintiff could not sustain fraud claims because it "fail[ed] to provide any details regarding . . . the claimants other than the eight examples provided in the complaint," *id.* at *5.

The court rejected the defendants' arguments and denied their motion to dismiss plaintiff's fraud claim. *Id.* at *5. The court noted that a "misrepresentation that is communicated indirectly to the plaintiff via a third party can support a fraud claim, so

long as the statement was made with the intent that it be communicated to the plaintiff and that the plaintiff rely on it." *Id.* at *4 (quoting *Pasternack*, 37 N.Y.3d at 829). Thus, the court explained that even if "plaintiff received the reports through the claimants' doctors," the defendants would not be entitled to dismissal of the fraud claim because the complaint plausibly alleged "that [the] defendants intended the reports to be passed on to and relied on by the plaintiff for insurance coverage purposes." *Id.* The court also rejected the defendants' arguments concerning the elements of fraud. Specifically, the court reasoned that the allegations that the defendants "knew their reports were false and . . . provided them to the referring doctors knowing they would be used to seek payments under plaintiff's policies and reimbursements for unnecessary medical treatment," was sufficient to support a strong inference of fraudulent intent. *Id.* at *3. The court further disagreed with the defendants' argument that plaintiff failed to plausibly allege damages and causation, noting that "[a]n insurance company's payments on claims for medically unnecessary services made in reliance on fraudulent misrepresentations contained in those claims form a well-accepted theory of injury." *Id.* at *4 (collecting cases). Finally, the court observed that the "complaint ma[de] clear that its allegations regarding" the claimants discussed in the complaint "[we]re merely meant to serve as illustrative examples, and that a substantially similar story c[ould] be told regarding each of the . . . claimants identified in the attached appendix." *Id.* at *5. Accordingly, the court rejected the defendants' argument that dismissal was warranted for lack of particularity concerning each of the claimants whom the complaint did not provide specific details. *See id.*

13

For the reasons discussed more fully below, the Court finds this reasoning persuasive and applicable to the instant case and finds that plaintiff plausibly alleges a claim for fraud.

### A. Material Misrepresentations

The complaint alleges that defendants made material misrepresentations by creating medical reports containing "findings and impressions that did not exist and/or fail[ing] to report findings and impressions." Compl. ¶ 9. For instance, as to Claimant A, defendants generated a report representing that the claimant had "annular tears at T4/5 and T5/6." Compl. ¶ 15. However, according to an independent review by a radiology expert of Claimant A's MRI film, "no annular tears [were] present." Compl. ¶ 16. Defendants argue that plaintiff's allegations as to this element fail for at least two reasons. First, the allegations in the complaint relating to Claimants A through C fall short of Rule 9(b)'s particularity requirement because the complaint does not allege "the date, time, place, speaker, and content of each purported misrepresentation or omission." Mot. 15. Second, "the [c]omplaint contains no specific allegations whatsoever concerning Claimants D through BB." Mot. 15. Therefore, defendants argue, the lack of "particularized pleading" as to those claimants warrants dismissal of "that portion of the fraud claim." Mot. 15.

Defendants' arguments are unavailing. For one, the complaint satisfies Rule 9(b)'s heightened pleading requirement by setting forth the "who, what, where, when and why of the alleged fraud." *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 366 (E.D.N.Y. 2010). The complaint specifies which statements were fraudulent and why: statements within medical reports that "provided findings and impressions that did not exist." Compl. ¶ 9; *see, e.g.,* Compl. ¶¶ 15–16

14

("CitiMed generated a report representing findings that there [were] . . . annular tears at T4/5 and T5/6. . . . [T]he finding of annular tears at T4/5 and T5/6 was not indicated as there were no annular tears present."). Plaintiff identifies who made the statements and to whom: defendants generated the reports and transmitted them to referring medical providers and, in certain instances, directly to plaintiff. *See* Compl. ¶¶ 17, 22, 27, 32; *see also* Opp'n 25. And plaintiff identifies where and when the statements were made by alleging the dates of the exams conducted at CitiMed's offices. *See* Compl. ¶¶ 15, 20, 25. Together, these allegations "are sufficiently particularized to put . . . defendant[s] on notice as to what . . . plaintiff charges its fraudulent conduct consisted of," and therefore satisfies Rule 9(b). *Bayer*, 701 F. Supp. 2d at 366; *see Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 440 (E.D.N.Y. 2011) ("The primary purpose of Rule 9(b)'s heightened pleading requirements is to afford defendants fair notice of the plaintiff's claim and the factual ground upon which it is based." (quoting *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990))); *see also Int'l Motor Sports Grp., Inc. v. Gordon*, No. 98-cv-005611, 1999 WL 619633, at *4 (S.D.N.Y. Aug. 16, 1999) ("Rule 9(b) does not require that a complaint plead fraud with the detail of a desk calendar or a street map.").

For similar reasons, the fact that the complaint does not set out the misrepresentations in each of the reports generated for Claimant D through Claimant BB does not require dismissal of plaintiff's fraud claim. As the complaint indicates, the details concerning the nature of the allegedly fraudulent medical reports with respect to Claimants A, B, and C are representative "example[s]" of the many more fraudulent claims arising from defendants' scheme. *See* Compl. ¶ 13; *see also* Compl. ¶ 36 ("A current list of claims that are substantially identical or similar to those demonstrated herein and at issue is attached hereto as Exhibit A."). Courts routinely permit fraud claims to proceed

15

where, as here, the complaint alleges with sufficient detail a number of specific claims representative of a larger number of identified claims. *See Stand Up MRI*, 2025 WL 3165668, at *5 ("Plaintiff's eight specific examples of fraudulent claims plus its allegation that these claims are representative of the fifty-one total provide enough detailed allegations to put defendants on notice of the nature of the scheme they are alleged to have perpetrated."); *State Farm Mut. Auto. Ins. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 237–38 (E.D.N.Y. 2008) (explaining that "Rule 9(b) does not require that each specific misrepresentation be identified where an ongoing fraudulent scheme is alleged," and reasoning that where exhibits to the complaint "list many specific claims that [the] plaintiff alleges were fraudulent[,] [t]hat level of specificity is sufficient to survive a motion to dismiss").

Accordingly, the Court finds that plaintiff pleads the alleged misrepresentations[3] with sufficient particularity to satisfy Rule 9(b), and defendants' motion to dismiss on this ground must be denied.

---

[3]    In addition to the affirmative misrepresentation claim, the parties also dispute whether plaintiff states a claim for actionable fraud by omission, that is, whether plaintiff states a plausible fraud claim based on defendants' alleged "fail[ure] to report findings and impressions" material to the overall accuracy of the medical reports. Compl. ¶ 9. In light of the fact that the misrepresentation-based fraud claims survive, defendants' motion to dismiss plaintiff's omission-based fraud theory is denied with leave to renew upon a fuller factual record. *See Karsch v. Blink Health Ltd.*, 291 F. Supp. 3d 503, 508 n.1 (S.D.N.Y. 2018) ("[T]he [c]ourt's rejection of dismissal of these claims . . . rest[s] on efficiency grounds. Assuming that the contract and fraud counts survive the motion to dismiss, the amount of discovery the litigation will generate will be predominantly determined by those claims. The volume of discovery is likely to encompass factual matters on which the elements of the remaining claims are based. Thus, there is little to be gained by addressing dismissal of these other claims at this time. If there is sufficient reason to dismiss them, [d]efendants can renew their challenge to the claims at the summary judgment stage—or even trial—on the basis of a fuller record.").

*B. Scienter*

To sufficiently plead a claim for fraud, a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). The "requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Although the "generalized motive to maximize profitability of a company is not sufficient to show a motive to commit fraud," *In re Corning*, No. 01-cv-06580, 2004 WL 1056063, at *27 (W.D.N.Y. Apr. 9, 2004), courts have repeatedly found a sufficiently strong inference of intent in the insurance context where a defendant has a "motive to receive monetary reimbursements to which they were not entitled, and they had the opportunity and ability to receive those reimbursements by submitting fraudulent claims." *Allstate Ins. v. Avetisyan*, No. 17-cv-04275, 2021 WL 1227625, at *6 (E.D.N.Y. Mar. 5, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 1224101 (Mar. 31, 2021). For an inference of scienter to arise through motive and opportunity, the defendants must "benefit[] in some concrete and personal way from the purported fraud." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 518 (S.D.N.Y. 2019).

Plaintiff alleges sufficient facts supporting a strong inference of fraudulent intent. Plaintiff alleges that defendants created medical reports omitting material facts or containing "findings and impressions that did not exist." Compl. ¶ 9. Defendants created these false reports with the knowledge that the reports would provide a "basis to render unnecessary treatment," and to "engage in litigation." Compl. ¶¶ 17, 22, 27. And defendants intentionally participated in this scheme to profit by way of (1) continued or

17

increased patient referrals, Compl. ¶¶ 10, 35; and (2) reimbursement for "unnecessary, excessive, [or] unwarranted" medical treatment, Compl. ¶ 32. Together these allegations demonstrate a sufficient motive and opportunity to infer a strong inference of fraudulent intent. *See Stand Up MRI*, 2025 WL 3165668, at *3; *see also Gov't Emps. Ins. v. Gateva*, No. 12-cv-04236, 2014 WL 1330846, at *6 (E.D.N.Y. Mar. 30, 2014) (finding allegations that the defendants "not only knew that they were submitting fraudulent claims for medical services . . . but that they did so intentionally as part of a calculated scheme to profit from payment of the claims . . . g[a]ve rise to a strong inference of fraudulent intent, and [we]re thus sufficient to establish the scienter requirement").

Defendants' argument that the complaint's "only allegations pertaining to scienter" concern how defendants stood to profit from the alleged scheme, and, thus, are insufficient to support an inference of fraudulent intent, *see* Mot. 17, is misplaced. Although defendants are correct that "[s]imply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent," Mot. 17 (quoting *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 114 (S.D.N.Y. 2021)), that is different in kind from what plaintiff alleges here: that defendants, a physician and her medical practice, stood to benefit in a personal and concrete way by enriching themselves through reimbursements for unnecessary, excessive, and unwarranted treatments. *See Allstate Ins. v. Lyons*, 843 F. Supp. 2d 358, 373 (E.D.N.Y. 2012) ("[T]he [c]omplaint sufficiently establishes that defendants had both the motive and opportunity to commit fraud. According to the [c]omplaint, defendants gained millions of dollars through their alleged fraud; surely this constitutes motive. And the [c]omplaint alleges that the defendants together entered into a scheme whereby they provided bogus MRIs and then requested reimbursement for false charges stemming from those MRIs—certainly an

18

opportunity for fraud."); *see also Minnie Rose*, 169 F. Supp. 3d at 518 (explaining that allegations that the defendants' participation in a scheme allowed them "to enrich themselves," demonstrated that the benefits were "concrete and personal, and thus, create[d] an inference of scienter at least as compelling as any opposing inference one could draw from the facts alleged").

Moreover, this argument fails to account for the fact that plaintiff does not merely plead that defendants had the motive to commit fraud, but also alleges that defendants had the opportunity to commit fraud. Namely, by "knowingly and intentionally submit[ing] or caus[ing] the submission of fraudulent medical documentation" to an insurer in the expectation of being paid. *See* Compl. ¶ 32; *see also Gov't Emps. Ins. v. Jacques*, No. 14-cv-05299, 2017 WL 9487191, at *7 (E.D.N.Y. Feb. 13, 2017) ("Plaintiffs allege that . . . [d]efendants had a motive to commit fraud, i.e., to gain a financial benefit of tens of thousands of dollars, and opportunity to commit fraud, i.e., the misrepresenting to [p]laintiffs of the extent of services provided, [and] that the services were medically necessary."), *report and recommendation adopted*, 2017 WL 1214460 (Mar. 31, 2017).

Defendants' contention that "[p]laintiff is seeking to transform routine differences in medical opinion regarding MRI interpretations into the basis for a new fraud claim" does not compel a different conclusion. *See* Mot. 19. To be sure, it may ultimately be the case that the allegedly fraudulent findings and impressions which plaintiff complains of amount to nothing more than a "difference[] in medical opinion." Mot. 19. And if the evidence demonstrates that defendants lacked fraudulent intent, plaintiff's fraud claim would, of course, not stand. *See Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 255 (2d Cir. 1988) ("Under New York law, it is well settled that intent to deceive is an essential element of fraud."). But at the pleading stage, the well-pled factual allegations

19

in the complaint control, and plaintiff is afforded all reasonable inferences in its favor. Here, the complaint alleges a scheme in which defendants generated fraudulent reports with false impressions and findings for purposes of defrauding plaintiff and others in order to enrich themselves through increased referrals and reimbursement for unnecessary and excessive services. This is sufficient to support an inference of scienter at the pleading stage, and consequently, support a plausible fraud claim. *See Stand UP MRI*, 2025 WL 3165668, at *3.

Accordingly, the Court finds that plaintiff's allegations plausibly give rise to a strong inference of fraudulent intent, and defendants' motion to dismiss the fraud claim on this ground is denied.[4]

*C. Reliance*

A fraud claim under New York law also requires that a plaintiff show that it "reasonably relied on the misrepresentations of the defendant." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 80 (2d Cir. 2011). Defendants advance two principal arguments as to why plaintiff's allegations fail to satisfy this element. First, defendants argue that the reports were not prepared for plaintiff and thus the "[c]omplaint lacks any proper allegation of a misrepresentation or omission made directly

---

[4]      Defendants' contention that the strength of an inference of fraudulent intent is weakened by the fact that plaintiff had access "to the underlying MRI films" which could have "expose[d] the alleged misrepresentation to the party the [defendants] purportedly intended to deceive and defraud[,]" Mot. 18, fails to move the needle. As detailed more fully below, plaintiff, an insurance company, was "permitted to rely on facially valid insurance claim forms submitted for reimbursement." *Gov't Emps. Ins. v. Alrof, Inc.*, No. 11-cv-04028, 2013 WL 9600668, at *4 (E.D.N.Y. July 19, 2013), *report and recommendation adopted*, 2013 WL 5209415 (Sep. 13, 2013). Thus, defendants fail to explain why plaintiff's access to MRI films, to the extent the complaint supports such an inference, undermines an inference of fraudulent intent to deceive plaintiff into paying fraudulent claims.

20

to [p]laintiff." Mot. 16. Defendants assert that "fraud claims premised on misrepresentations made to third parties are not actionable unless the third party functioned as a conduit for communicating the false statements to the plaintiff, and the defendant intended that the plaintiff receive and rely upon those statements." Mot. 16. And here, defendants contend that the complaint "fails to assert that the reports were either prepared for or intended to be provided to [p]laintiff." Mot. 16. Second, defendants argue that any reliance on the alleged misrepresentations in the false reports could not have been reasonable because plaintiff had "direct access to the underlying source material—the MRI films—from which the reports were generated." Mot. 18–19. Thus, in defendants' view, plaintiff could have, and in fact did, conduct its own review of the films to "discern the truth and an independent means of verifying the accuracy of the alleged misstatement or omission." Mot. 19. Neither argument warrants dismissal of plaintiff's fraud claim.

To begin, defendants' contention that plaintiff's allegations do not support third-party reliance fails for the simple reason that the complaint "clearly alleges [d]efendants intentionally submitted or caused the submission of some of these documents to [p]laintiff." Opp'n 25. Indeed, the complaint alleges that "[a]s part of the [f]raud [s]cheme, the [d]efendants knowingly and intentionally submitted or caused the submission of fraudulent medical documentation either directly or indirectly to [p]laintiff." Compl. ¶ 32. This allegation is further supported by the allegedly false reports generated for the example claimants, each of which plaintiff alleges that defendant "intentionally transmitted . . . to . . . [p]laintiff[.]" Compl. ¶¶ 17, 22, 27. Put simply, "[c]ontrary to defendants' characterization of the complaint, plaintiff alleged that the . . . reports were communicated directly from defendants to plaintiff . . . [and] [d]efendants'

third-party reliance arguments are simply inapplicable." *Stand Up MRI*, 2025 WL 3165668, at *4.

Even if plaintiff relied solely on representations made to third parties in support of its fraud claim, the Court would find that the allegations sufficiently support reliance. New York law permits recovery based on misrepresentations made to a third party so long as the plaintiff plausibly alleges that it "relied to [its] detriment on the defendant's misrepresentation and that the defendant intended the misrepresentation to be conveyed to him." *Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 71 (2d Cir. 2000). Here, plaintiff alleges that it relied to its detriment on defendants' representations "concerning their eligibility to receive payments of insurance benefits," including by way of misrepresentations in medical documents. *See* Compl. ¶ 44. Plaintiff further alleges that defendants intended that the misrepresentations be communicated to plaintiff, particularly because defendants "knew that [p]laintiff would and did pay" for the exam records and treatment. Compl. ¶¶ 17, 22, 27. Indeed, based on the complaint's allegations, it's reasonable to infer that defendants, a physician and her medical practice, intended that the documentation they generated for services rendered in connection with treatment for accidents ultimately would be communicated to their patients' insurer, "the party responsible for payment of any medical services," Opp'n 25, even if only indirectly. *See Stand Up MRI*, 2025 WL 3165668, at *4.

Defendants' second argument as to why reliance is insufficiently pled fares no better. Defendants suggest that it was unreasonable for plaintiff to rely on the allegedly fraudulent reports because it had access to the underlying MRI films and could have independently reviewed the films to confirm the accuracy of the reports. *See* Mot. 18–19. But courts have uniformly held that "insurers are entitled to rely" on a healthcare

22

provider's representations made in connection with reimbursement and billing. *Gov't Emps. Ins. v. Jacobson*, No. 15-cv-07236, 2021 WL 2589717, at *16 (E.D.N.Y. June 24, 2021); *see also Lyons*, 843 F. Supp. 2d at 375 ("It is . . . incorrect to claim that [plaintiff insurer] was remiss in relying on defendants' facially reasonable diagnoses and claims for payment and failing to uncover their falsity."); *Alrof*, 2013 WL 9600668, at *4 ("[I]nsurance companies are permitted to rely on facially valid insurance claim forms submitted for reimbursement."). Moreover, to the extent plaintiff was in possession of the "underlying source material" to investigate the validity of the reports, Mot. 18–19, "[u]ltimately, it will be for the jury to decide whether it was reasonable for [plaintiff] to rely on defendants' . . . representations for as long as it did or whether it should have discovered any possible fraud sooner." *Jacobson*, 2021 WL 2589717, at *16.

Accordingly, the Court finds that plaintiff plausibly alleges it relied on defendants' misrepresentations, and defendants' motion to dismiss for lack of reliance is denied.

### D. Damages & Causation

Finally, the Court finds that the complaint contains sufficient factual matter to infer that defendants' alleged misrepresentations caused plaintiff damages. As previously discussed, the complaint catalogues plaintiff's damages arising from the allegedly fraudulent medical reports, including, but not limited to, "benefit payments paid by [p]laintiff to [d]efendants" induced by the "fraudulent course of conduct by [d]efendants." Compl. ¶ 48. These payments also included, for example, payment for defendants' exam records generated in connection with Claimants A, B, and C's examinations. [5] *See* Compl.

---

[5] The Court notes that plaintiff included "actual and consequential damages for the payments [plaintiff] made as costs for defending fraudulent lawsuits," in it damages calculation in the complaint. Compl. ¶ 37. In their opening brief, defendants argued that

¶¶ 17, 22, 27. Therefore, contrary to defendants' argument, the complaint does contain "factual allegations regarding . . . payments made to . . . [d]efendants." Mot. 19. And to the extent the complaint lacks "detail indicating whether [p]laintiff made any such payments before or after reviewing the MRI report(s)," Mot. 19, this argument fails to defeat an inference of causation because plaintiff repeatedly alleges—again, using the instances of Claimants A, B, and C, as examples—that it "issued payment by mail and/or by EFT transfer to . . . [d]efendants" "[b]ased on the issuance and submission of the fraudulent report and other claim documentation." Compl. ¶¶ 18, 23, 28. Accordingly, defendants' motion to dismiss for lack of damages or causation is denied.

*     *     *

In sum, the Court concludes that the complaint plausibly alleges a common law fraud claim arising under New York law based on defendants' misrepresentations in medical reports generated as part of the alleged fraud scheme. Accordingly, defendants' motion to dismiss this claim is denied. *See Stand Up MRI*, 2025 WL 3165668, at *2–5.

---

such payments "fail[] as a matter of law." Mot. 19. To the extent defendants suggest that these sorts of costs are never recoverable as a matter of law, the Court disagrees. "Although ordinarily legal expenses necessarily incurred in carrying on a lawsuit may not be recovered as damages under New York law, there is an exception where the damages are the proximate and natural consequence of defendants' tortious act which requires plaintiff to defend or to bring an action against a third party." *Stand Up MRI*, 2025 WL 3165668, at *4 (quoting *Cent. Tr. Co., Rochester v. Goldman*, 417 N.Y.S.2d 359, 361 (4th Dep't 1979)). Moreover, the *Stand Up MRI* court found it "at least facially plausible that plaintiff's litigation expenses defending the third-party suits brought against its insureds occasioned by defendants' fraudulent reports likely fall into this category." *Id.* Still, defendants largely failed to address the contours of this rule and its applicability to the instant case. *See generally* Mot.; Reply. Accordingly, "in the absence of briefing on the issue by defendants, the Court declines to rule out this category of damages at the motion-to-dismiss stage." *Stand Up MRI*, 2025 WL 3165668, at *4.

### III.    Unjust Enrichment

Plaintiff also brings a claim for unjust enrichment. *See* Compl. ¶¶ 50–57. Unjust enrichment is "a New York common law quasi-contract cause of action requiring the plaintiff to establish: (1) that the defendant[s] benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018). Although it is distinct claim, "unjust enrichment is not a catchall cause of action to be used when others fail." *Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 178 (S.D.N.Y. 2022) (quoting *Corsello*, 18 N.Y.3d at 790). In other words, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697, 2016 WL 6459832, at *10 (S.D.N.Y. Oct. 26, 2016) (quoting *Corsello*, 18 N.Y.3d at 790); *see also Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023) (explaining that unjust enrichment is "available *only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff") (quoting *Corsello*, 18 N.Y.3d at 790).

The unjust enrichment claim must be dismissed as duplicative. The complaint's allegations make clear that plaintiff's unjust enrichment claim is "based on the same transactions as [its] claims for common law fraud." *Gov't Emps. Ins. v. Galperin*, No. 23-cv-09241, 2025 WL 1029433, at *7 (E.D.N.Y. Feb. 24, 2025), *report and recommendation adopted*, 2025 WL 909190 (Mar. 26, 2025). Indeed, "plaintiff's unjust enrichment claim is duplicative because it is predicated on exactly the same factual allegations as its fraud claim." *Stand Up MRI*, 2025 WL 3165668, at *6. Specifically, both claims are based on defendants' "[f]raud [s]cheme," in which plaintiff paid defendants due to their

25

"misrepresentations and omissions" concerning fraudulent treatment. *Compare* Compl. ¶¶ 42–44, *with*, Compl. ¶¶ 53–55. The unjust enrichment claim is therefore duplicative and must be dismissed. *See Izquierdo*, 2016 WL 6459832, at *10.

Plaintiff's attempt to resist this conclusion by distinguishing the damages that the two claims seek is without merit. Although plaintiff is correct that the category of damages the fraud claim seeks is broader in scope than those sought in its unjust enrichment claim, *see* Opp'n 29, this fails to move the needle because "the damages available under an unjust enrichment claim would be a strict subset of those available under the fraud claim," *Stand Up MRI*, 2025 WL 3165668, at *6. Indeed, plaintiff admits as much. *See* Opp'n 29 ("[T]he unjust enrichment claim only seeks reimbursement of the amounts [p]laintiff paid directly to [d]efendant, the fraud claim seeks payments made to [d]efendants and others, along with damages for defending fraudulent lawsuits, for payments to other providers whose prescribed course of treatment was predicated upon the fraudulent reports, and punitive damages."). In other words, success on the unjust enrichment claim would not grant plaintiff any additional relief it could not recover under the fraud claim, thus making the former duplicative. *Stand Up MRI*, 2025 WL 3165668, at *6; *see also Watson v. Suffolk Fed. Credit Union*, No. 20-cv-01531, 2022 WL 523543, at *4 (E.D.N.Y. Feb. 22, 2022) ("[W]here the claim for unjust enrichment seeks the same relief as is sought for breach of contract, the unjust enrichment claim is properly dismissed as duplicative.").

Nor does plaintiff's contention that the unjust enrichment claim was pled in the alternative save it from dismissal. Although "a plaintiff may plead unjust enrichment in the alternative, . . . where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019). And here, aside from a conclusory argument, Opp'n 30, plaintiff fails

26

to explain "how a reasonable jury could rule for [it] on unjust enrichment but not fraud, or vice versa." *Stand UP MRI*, 2025 WL 3165668, at *6. Put differently, based on the facts alleged, equity and good conscience would require restitution only if defendants misrepresented facts in the reports to obtain reimbursements for services rendered, which "is duplicative of [p]laintiff's core theory of deception," and, therefore, the unjust enrichment claim must be dismissed. *Brownell v. Starbucks Coffee Co.*, 681 F. Supp. 3d 27, 41 (N.D.N.Y. 2023) ("[B]ecause [p]laintiff's unjust enrichment claim is that [d]efendant enriched itself by misrepresenting the [p]roduct, which is duplicative of [p]laintiff's core theory of deception, the [c]ourt additionally grants [d]efendant's motion to dismiss [p]laintiff's unjust enrichment claim as duplicative."); *see also Stand Up MRI*, 2025 WL 3165668, at *6.

### IV. Declaratory Judgment

Finally, plaintiff's claim for declaratory judgment is also dismissed as duplicative. "[W]hen a plaintiff seeks declaratory relief for issues that will be resolved by duplicative underlying claims, dismissal of the declaratory judgment claims is proper." *Hutch Enters. v. Cincinnati Ins.*, No. 16-cv-01010, 2017 WL 3601900, at *1 (W.D.N.Y. June 13, 2017); *see also Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) ("Dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action."). The relief plaintiff seeks under his declaratory judgment claim—a declaration that defendants "have sought reimbursement for providing fraudulent healthcare services in violation of New York law," engaged in unlawful activity, and that plaintiff "is entitled to the return of payments made directly to . . . [d]efendants as a result of [d]efendants' unlawful conduct," Compl. ¶ 61—is plainly duplicative of its cause of action for fraud, *see Stand Up MRI*, 2025 WL 3165668, at *7.

27

To the extent the Opposition seeks a declaration declaring different rights and obligations than those raised in the complaint, *see* Opp'n 31–32, such a request is not properly before the Court on a motion to dismiss, *see Guadagni v. N.Y.C. Transit Auth.*, No. 08-cv-03163, 2009 WL 1910953, at *8 (E.D.N.Y. June 30, 2009) ("[A] claim for relief may not be amended by the briefs in opposition to a motion to dismiss.").

## CONCLUSION

For the reasons stated above, defendants' motion for judgment on the pleadings is **GRANTED** in part, and **DENIED** in part. Plaintiff's claims for unjust enrichment and declaratory judgment are dismissed. This case is respectfully referred to Chief Magistrate Judge Vera M. Scanlon for pretrial supervision.

**SO ORDERED.**

_/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge

Dated:   March 20, 2026
         Brooklyn, New York